IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SUPERSPEED, L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-1688 |
| | § | |
| GOOGLE, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a patent infringement suit filed by SuperSpeed, L.L.C.
("SuperSpeed") against Google, Inc. ("Google"), involving
United States Patent Nos. 5,577,226 ("'226 Patent") and 5,918,244
("'244 Patent"). The '226 Patent is the parent application to the
'244 Patent, and both patents claim priority to U.S. Application
No. 08/238,815, filed on May 6, 1994. Pending before the court are
SuperSpeed's Motion to Strike Portions of Kubiatowicz Expert Report
Referring to Undisclosed Invalidity Allegations (Docket Entry
No. 160), Defendant Google Inc.'s Motion to Exclude Testimony of
SuperSpeed, LLC's Expert Robert Mills (Docket Entry No. 163), and
Defendant Google Inc.'s Motion for Summary Judgment in Support of
Invalidity, Non-Infringement, and No Willful Infringement (Docket
Entry No. 164). For the reasons stated below, Google's motion for
summary judgment will be denied as to invalidity and granted as to
non-infringement and willful infringement, SuperSpeed's motion to
strike and Google's motion to exclude will both be denied as moot.

## I.  **Allegations of Infringement**

The SuperSpeed patents relate to a method and system for caching I/O devices across a network embodied in a software product known as "SuperCache V1.3-01 through V2.1-27."[1] SuperSpeed alleges that Google infringes thirteen claims from the two patents:

- Patent No. 5,577,226: claims 27 & 30-33;

- Patent No. 5,918,244: claims 15, 20-21, 25-26, & 31-33.[2]

SuperSpeed alleges that Google infringes these claims both literally and under the doctrine of equivalents "by making, using, selling, importing, and/or offering to sell within the United States several infringing products, including several Google apps and their constituents, including but not limited to Google Docs, Google Sheets, Google Slides and Google Drive."[3] SuperSpeed also alleges that Google is infringing these patents "by actively inducing the infringement of others."[4]  Both SuperSpeed patents have been the subject of prior litigation: <u>SuperSpeed v. Oracle Corporation</u>, 4:04-cv-3409, in this district, and <u>SuperSpeed v. IBM Corporation</u>, 2:07-cv-89, in the Eastern District of Texas.

---

[1]Plaintiff's Amended P.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions and P.R. 3-2 Disclosures ("Plaintiff's Amended P.R. 3-1 Disclosure"), Docket Entry No. 88, p. 4.

[2]<u>Id.</u> at 2 and 4.

[3]First Amended Complaint, Docket Entry No. 64, p. 5 ¶ 19.  <u>See also</u> Plaintiff's Amended P.R. 3-1 Disclosure, Docket Entry No. 88, pp. 2-3.

[4]First Amended Complaint, Docket Entry No. 64, p. 5 ¶ 20.

## II.  Google's Motion for Summary Judgment

Google argues that it is entitled to summary judgment on SuperSpeed's claims for three reasons: (1) the patents are invalid because EEC Systems, Inc. ("EEC"), the original assignee of the '226 and '244 Patents and SuperSpeed's precedessor in interest, offered for sale and then sold SuperCache to Pittsburgh National Bank ("PNC Bank") on March 8, 1993, more than one year before May 6, 1994, the claimed priority date for both patents-in-suit; (2) SuperSpeed is unable to set forth evidence showing that the allegedly infringing products practice three limitations found in all of the asserted claims; and (3) SuperSpeed is unable to present evidence showing that any infringement was willful.[5]  SuperSpeed has responded with evidence refuting Google's first two grounds for summary judgment, but has neither argued nor submitted evidence refuting Google's argument that any infringement was not willful.[6]

### A.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a

---

[5]Defendant Google Inc.'s Motion for Summary Judgment in Support of Invalidity, Non-Infringement, and No Willful Infringement ("Google's Second MSJ"), Docket Entry No. 164.

[6]SuperSpeed's Response in Opposition to Google's Second Motion for Summary Judgment ("SuperSpeed's Response"), Docket Entry No. 172.

reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that facts exist over which there is a genuine issue for trial. Id. See Bellard v. Gautreaux, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial."). "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" Little, 37

-4-

F.3d at 1075 (quoting Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993).

A party opposing summary judgment must point to an evidentiary conflict in the record.  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  Little, 37 F.3d at 1075.   In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Nevertheless, expert declarations that are wholly conclusory -- devoid of facts upon which the declarant's conclusions were reached -- will not suffice to create fact issues for trial.  TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("general assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden").

> [T]he party opposing the motion for summary judgment of noninfringement must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant.  Mere denials or conclusory statements are insufficient.

Id.  "Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 646 (Fed. Cir. 1994).

-5-

## B.   **Analysis**

### 1.   Invalidity

Asserting that SuperCache V1.2-11 embodied the asserted claims, Google argues that the on-sale bar articulated in 35 U.S.C. § 102(b) renders all asserted claims invalid because EEC sold two copies of SuperCache V1.2-11 to PNC Bank prior to the critical date of May 6, 1993, and PNC Bank reduced the invention to practice by using the SuperCache software on its network of clustered computers without experiencing unreliability caused by a software bug ("the MIT bug") that SuperSpeed contends rendered all versions of SuperCache sold before the critical date inoperable.[7] SuperSpeed argues that the on-sale bar does not invalidate its patents because (1) the only allegedly invalidating sale either took place after the critical date of May 6, 1993, or was for something other than SuperCache for clusters, and (2) the claimed inventions were not ready for patenting until September 3, 1993 -- four months after the critical date -- when the inventor, Ian Percival, resolved the MIT software bug.[8]

---

[7] Google's Second MSJ, Docket Entry No. 164, pp. 2, 11-15. See also Defendant Google Inc.'s Reply Brief in Support of Its Motion for Summary Judgment of Invalidity, Non-Infringement, and No Willful Infringement ("Google's Reply"), Docket Entry No. 175, pp. 1-11. Although Google asserts that "any claims not subject to the on-sale bar are invalid for obviousness under 35 U.S.C. § 103(a)," id. at 11, Google failed to cite any evidence or to offer any argument in support of this assertion. Accordingly, Google is not entitled to summary judgment that the patents-in-suit are invalid on the basis of obviousness.

[8] SuperSpeed's Response, Docket Entry No. 172, pp. 1-14; SuperSpeed's Sur-Reply in Opposition to Google's Second Motion for
(continued...)

(a)  Applicable Law

The on-sale bar set forth in 35 U.S.C. § 102(b) provides in pertinent part that a person shall not be entitled to a patent if the invention was "on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).[9]  In <u>Pfaff v. Wells Electronics, Inc.</u>, 119 S. Ct. 304 (1998), the Supreme court established a two-part test for determining when the on-sale bar invalidates a patent.  The <u>Pfaff</u> test requires that more than one year before the date of the patent application the invention be (1) the subject of a commercial sale or offer for sale and (2) ready for patenting.  <u>Id.</u> at 311-12.  The "critical date" for assessing the validity of a patent is the date one year before the patent application was filed.  <u>Id.</u> at 307.  Here, there is no dispute that the critical date is May 6, 1993, i.e., one year

---

[8](...continued)
Summary Judgment ("SuperSpeed's Sur-Reply"), Docket Entry No. 179, pp. 1-9.

[9]The language of § 102 was significantly amended by the America Invents Act ("AIA"), Pub. L. No. 112-29, § 3(b)(1), 125 Stat 284, 286 (2011).  However, the former version of § 102 applies to this case because the amendments to § 102 apply only to patents with an effective filing date of March 16, 2013, or later.  <u>See</u> Pub. L. No. 112-29, § 3(n), 125 Stat at 293, set out as a note under 35 U.S.C. § 100.  The former version applicable in this case is set out in the note addressing amendments under 35 U.S.C. § 102. <u>See also</u> <u>Medisim Ltd. v. BestMed, LLC</u>, 758 F.3d 1352, 1354 n.1 (2014) ("The . . . 'AIA,' Pub.L. No. 112-29, took effect on March 18, 2013.  Because the application for the patent at issue in this case was filed before that date, we refer to the pre-AIA version of § 102.").

before the application for the '226 patent was filed.[10]  Whether the
on-sale bar invalidates SuperSpeed's patents is a question of law
based on underlying facts.  See Hamilton Beach Brands, Inc. v.
Sunbeam Products, Inc., 726 F.3d 1370, 1375 (Fed. Cir. 2013).
"Because patents bear a presumption of validity, 35 U.S.C. § 282,
invalidity based on the on-sale bar must be established by clear
and convincing evidence."  Gemmy Industries Corp. v. Chrisha
Creations Ltd., 452 F.3d 1353, 1358 (Fed. Cir. 2006) (citing Group
One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1045-46 (Fed.
Cir. 2001)).  See SRAM Corp. v. AD-II Engineering, Inc., 465 F.3d
1351, 1357 (Fed. Cir. 2006) ("a [movant] seeking to invalidate a
patent at summary judgment must submit such clear and convincing
evidence of facts underlying invalidity that no reasonable jury
could find otherwise").

     (b)  Application of the Law to the Undisputed Facts

        **(1)  Whether the Patented Invention Was the Subject
        of a Commercial Sale or Offer for Sale Before
        the Critical Date Is a Fact Question for Trial**

The Federal Circuit has held that the first prong of the Pfaff
test is satisfied when a defendant has presented clear and
convincing evidence that there was a definite commercial sale or

---

[10]See Google's Second MSJ, Docket Entry No. 164, p. 5 ("Because
all of the patents share a common specification and claim priority
to the '226 patent, which was filed on May 6, 1994, the Critical
Date for each of the SuperSpeed patents-in-suit is May 6, 1993.").
See also SuperSpeed's Response, Docket Entry No. 172, p. 1
(referring to May 6, 1993, as the "critical date"); Google's Reply,
Docket Entry No. 175, p. 2 (same).

offer for sale of an embodiment of the claimed invention.  <u>See</u>
<u>Leader Technologies, Inc. v. Facebook, Inc.</u>, 678 F.3d 1300, 1305
(Fed. Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 889 (2013) (citing
<u>Scaltech, Inc. v. Retec/Tetra, L.L.C.</u>, 178 F.3d 1378, 1383 (Fed.
Cir. 1999) (recognizing that "the first determination in the
§ 102(b) analysis must be whether the subject of the barring
activity met each of the limitations of the claim, and thus was an
embodiment of the claimed invention")).

As evidence that the patented invention was the subject of a
commercial sale or offer for sale of the claimed invention prior to
the critical date, Google cites:  (1) a  March 5, 1993, invoice
from EEC to PNC Bank for two copies of SuperCache VMS VAX 6610 at
a cost of $14,400.00 -- order number "C 001 23528";[11] (2) a March 8,
1993, PNC Bank purchase order for a software license for SuperCache
Disk Caching referencing order number "C 001 23528";[12] (3) a blank
EEC License Agreement for Systems Software;[13] and (4) the deposition
testimony of Gary Chieffe, PNC Bank's manager of information
resources,[14] that PNC Bank "received, successfully installed, and

---

[11]Google's Second MSJ, Docket Entry No. 164, pp. 6-7 (citing
Exhibit J, EEC Systems, Inc. Invoice No. 302009, Docket Entry
No. 165-7).

[12]<u>Id.</u> at 7 (citing Exhibit K, PNC Bank Purchase Order C 001
2352B, Docket Entry No. 165-8).

[13]<u>Id.</u> (citing Exhibit G, License Agreement for Systems
Software, Docket Entry No. 165-4).

[14]<u>Id.</u> (citing Exhibit I, Deposition of Gary Chieffe, Docket
Entry No. 165-6, p. 8:11).

commercially used SuperCache . . . on its cluster [of two computers]."[15]  Asserting that this evidence reflects a commercial sale of SuperCache V1.2-11 to PNC Bank in March of 1993, Google argues that it has satisfied the first prong of the Pfaff test because SuperCache V1.2-11 for cluster use embodied all of the asserted claims.[16]

SuperSpeed responds that "[m]aterial factual disputes about what was sold and when preclude summary judgment on Google's invalidity claim."[17]  SuperSpeed asserts that Google's argument that the March 5, 1993, invoice and the March 8, 1993, purchase order reflect a sale to PNC Bank of SuperCache V1.2-11 for cluster use cannot be correct because (1) the SuperCache Release Notes show that V1.2-11 did not exist before April 1, 1993,[18] (2) Chieffe testified that PNC Bank tested software before purchasing it, but could not have tested SuperCache V1.2-11 (or any other SuperCache product) before May 13-14, 1993, when EEC first issued PNC Bank temporary licenses to test a SuperCache product,[19] and

---

[15]Id. (citing Exhibit I, Deposition of Gary Chieffe, Docket Entry No. 165-6, pp. pp. 10:14-11:7, 12:4-15, 13:9-15:5, 23:12-24:23, 27:9-28:19, 36:12-37:9).

[16]Id. at 13.

[17]SuperSpeed's Response, Docket Entry No. 172, p. 3.

[18]Id. (citing Exhibit A to Declaration of Adam Carlis ("Carlis Declaration"), SuperCache Release Notes, Docket Entry No. 172-2, p. 4).

[19]Id. at 4 (citing Exhibit D to Carlis Declaration, Chieffe Deposition, Docket Entry No. 172-5, pp. 45:6-18 and 51:4-6;
(continued...)

(3) SuperSpeed's managing partner, Eric Dickman ("Dickman") testified that prior to May 6, 1993, PNC Bank was a TurboCache, not a SuperCache, customer, and EEC issued SuperCache licenses only for stand-alone not clustered computers.[20]

Asserting that EEC represented in both pre-1993 advertisements as well as in the User's Guide for a version of SuperCache that undisputedly existed in March of 1993, i.e., SuperCache V1.2-08, that SuperCache software could be used by either stand-alone or non-stand-alone, i.e., networked or clustered, computers, Google argues in reply that SuperSpeed's evidence fails to raise a genuine issue of material fact for trial because any version of SuperCache software sold or offered for sale to PNC Bank in March of 1993 would have embodied all of the invention's asserted claims.[21] Google also argues that SuperSpeed cannot rely on Dickman's testimony that prior to May 6, 1993, PNC Bank was not a SuperCache

_____

[19] (...continued)
Exhibits E and F to Carlis Declaration, SuperCache Licensing Records, Docket Entry Nos. 172-6 and 172-7, showing that Customer PAK 40 and 41 were issued to PNC Bank on May 13 and 14, 1993).

[20] Id. at 4-5 (citing Exhibits C and G to Carlis Declaration, Affidavit of Eric Dickman, Docket Entry No. 172-4, ¶¶ 4-6, and Deposition of Eric Dickman, Docket Entry No. 172-8, p. 171:18-22).

[21] Google's Reply, Docket Entry No. 175, pp. 1-7 (citing Exhibit F to Google's Second MSJ, DEC Professional Squeezing Top Performance from an AXP Server, Docket Entry No. 165-3, and Exhibit A to Declaration of Marcus Barber in Support of Google Inc.'s Reply in Support of Google's Motion for Summary Judgment of Invalidity, Non-Infringement, and No Willful Infringement ("Barber Declaration"), SuperCache V1.2 User and Installation Guide A Turboware Product (Revision/Update Information: V1.2-08), Docket Entry No. 176-1, p. iii (referencing "VAXcluster Installation")).

but, instead, a TurboCache customer, because that testimony
contradicts without explanation SuperSpeed's interrogatory
responses in a related litigation.[22]  Google argues that

> [i]n the IBM litigation, SuperSpeed initially confirmed
> that the March 5, 1993 sale to PNC was a "SuperCache
> sale." . . These interrogatory responses also omitted PNC
> [Bank] from a list of licensees to TurboCache. . . Absent
> competent evidence that contradicts the clear terms of
> the March 1993 Invoice and Purchase Order, SuperSpeed
> cannot establish a genuine material issue of fact with
> these new contradictory declarations.[23]

The court concludes that although Google has submitted
evidence that EEC sold or offered to sell PNC Bank a SuperCache
product in March of 1993, Google has failed to offer evidence
capable of establishing as a matter of law that the SuperCache
product sold or offered for sale to PNC Bank in March of 1993 was
an embodiment of the claimed invention. See Leader, 678 F.3d at
1305 (citing Scaltech, 178 F.3d at 1383 (recognizing that product
sold must meet each limitation of the disputed patent claim)).
Google asserts that the V1.2-11 and earlier versions of SuperCache
embodied the claimed invention because those versions could be used
by a clustered network of computers as opposed to stand-alone
computers,[24] but Google has failed to offer evidence capable of

---

[22]Id. at 6 (citing Affidavit of Eric Dickman, Exhibit C to
Carlis Declaration, Docket Entry No. 172-4, ¶¶ 4-5).

[23]Id. at 6-7 (citing Exhibit B to Barber Declaration,
SuperSpeed, LLC's Responses and Objections to Defendant IBM's First
Set of Interrogatories (Nos. 1-17) filed in SuperSpeed, L.L.C. v.
IBM Corp., Civil Action No. 2:07-CV-089, Docket Entry No. 176-2)).

[24]Google's Second MSJ, Docket Entry No. 164, p. 2.

proving that any version of SuperCache that preceded V1.3 incorporated the patented technology that SuperSpeed alleges has been infringed.[25]  Moreover, even assuming without deciding that any version of SuperCache that could be used on a network of clustered computers was an embodiment of the claimed invention, the record reveals that there is a genuine factual dispute as to whether SuperCache for use on a network of clustered computers was the subject of a sale or offer for sale before the critical date.

The March 1993 invoice and purchase order both identify the software sold or offered for sale to PNC Bank as "SuperCache," but do not identify which version of SuperCache was sold or offered for sale.  Nor does the invoice or purchase order state whether the software referenced thereon was for use by stand-alone computers as SuperSpeed contends or for use by clustered computers as Google contends.  The License Agreement that Google cites is a form with blank spaces to be filled in later.  It does not provide any evidence regarding the version of SuperCache referenced on the March 1993 invoice and purchase order or whether that version could have been used by clustered computers.[26]  Google's reliance on Chieffe's testimony that PNC Bank "received, successfully

---

[25]See Plaintiff's Amended P.R. 3-1 Disclosure, Docket Entry No. 88, p. 4 (stating that the patents at issue in this action relate to a method and system for caching I/O devices across a network embodied in a software product known as "SuperCache V1.3-01 through V2.1-27").

[26]See Exhibit G, License Agreement for Systems Software, Docket Entry No. 165-4.

installed, and commercially used SuperCache . . . on its cluster
[of two computers],"[27] as evidence that whatever version of
SuperCache was sold to PNC Bank in March of 1993 embodied all of
the asserted claims is misplaced because Chieffe also testified
that he had no recollection of what version of SuperCache PNC Bank
received,[28] when that version was shipped or received,[29] or whether
that version corrupted data or crashed the bank's system.[30]
Google's contention that SuperSpeed cannot rely on Dickman's
testimony that prior to May 6, 1993, EEC only issued SuperCache
licenses for stand-alone computers because the testimony
contradicts without explanation SuperSpeed's interrogatory
responses in the IBM case,[31] is misplaced. SuperSpeed's interroga-
tory responses state that the SuperCache product PNC Bank purchased
was for use on stand-alone, not clustered, computers.[32] The court

------

[27]See Google's Second MSJ, Docket Entry No. 164, p. 7 (citing
Exhibit I to Google's Second MSJ, Deposition of Gary Chieffe,
Docket Entry No. 165-6, pp. 10:14-11:7, 12:4-15, 13:9-15:5, 23:12-
24:23, 27:9-28:19, 36:12-37:9).

[28]See SuperSpeed's Sur-Reply, Docket Entry No. 179, pp. 5, 7
(citing Exhibit E to Declaration of Adam Carlis ("Carlis
Declaration"), Deposition of Gary Chieffe, Docket Entry No. 179-6,
pp. 52:22-53:14).

[29]Id. (citing Exhibit E thereto, Deposition of Gary Chieffe,
Docket Entry No. 179-6, pp. 53:13-21).

[30]Id. at 4 (citing Exhibit E thereto, Deposition of Gary
Chieffe, Docket Entry No. 179-6, pp. 25:12-17).

[31]See Google's Reply, Docket Entry No. 175, p. 6.

[32]SuperSpeed's Sur-Reply, Docket Entry No. 179, p. 9 (citing
Exhibit H at p. 72, SuperSpeed, LLC's Responses and Objections to
(continued...)

-14-

concludes that whether the patented invention was the subject of a commercial sale or offer for sale prior to the critical date of May 6, 1993, is a fact question for trial.

>           **(2)   Whether the Invention Was Ready for Patenting Before the Critical Date is a Fact Question for Trial**

The second prong of the <u>Pfaff</u> test, i.e., that the invention be ready for patenting prior to the critical date,

> may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

<u>Pfaff</u>, 119 S. Ct. at 312.   "An invention is reduced to practice when the patentee has an embodiment that meets every limitation and operates for its intended purpose."   <u>Honeywell International Inc.</u> <u>v. Universal Avionics Systems Corp.</u>, 488 F.3d 982, 997 (Fed. Cir. 2007).   "An invention works for its intended purpose when there is a demonstration of the workability or utility of the claimed invention."   <u>Id.</u>

Citing Chieffe's deposition testimony that PNC Bank "received, successfully installed, and commercially used SuperCache V1.2-11 on

---

[32](...continued)
Defendant IBM's First Set of Interrogatories (Nos. 1-17) filed in <u>SuperSpeed, L.L.C. v. IBM Corp.</u>, Civil Action No. 2:07CV-089, Docket Entry No. 179-9, pp. 73-74 (IBM-SS-GOOGLE 00004914-0004915).

its cluster [of two computers],"[33] Google argues that SuperCache was
ready for patenting before the critical date because

> [a]s shown by PNC's successful use of V1.2-11, the
> undisputed facts attest that SuperCache V1.2-11
> successfully operated on and improved the performance of
> a clustered network of computers and otherwise fulfilled
> the intended purpose of the claimed inventions, thereby
> demonstrating those inventions were ready for
> patenting.[34]

However, since Google acknowledges that "[pursuant to this sale,
SuperSpeed delivered the purchased software, SuperCache V.1.2-11,
[to PNC Bank] on or around May 14, 1993,"[35] i.e., sometime after the
critical date of May 6, 1993, Google has failed to present evidence
showing that PNC Bank reduced the invention to practice by putting
it to use before the critical date.  Moreover, Google has not cited
any evidence showing that the SuperCache software was described in
writing or in drawings sufficient to permit one of ordinary skill
in the art to practice the invention without undue experimentation

---

[33]Google's Second MSJ, Docket Entry No. 164, p. 7 (citing
Exhibit I, Deposition of Gary Chieffe, Docket Entry No. 165-6,
pp. 10:14-11:7, 12:4-15, 13:9-15:5, 23:12-24:23, 27:7-28:19, 36:12-
37:9).  See also Google's Reply, Docket Entry No. 175, p. 1
(asserting that PNC Bank "successfully implemented and operated
SuperCache in a cluster configuration for the life of the system
with no notable issues or problems").

[34]Google's Second MSJ, Docket Entry No. 164, p. 15.

[35]Id. at 7 (citing Exhibit I, Deposition of Gary Chieffe,
Docket Entry No. 165-6, pp. 27:7-29:4).  See also id. at 15 ("The
reduction to practice of the inventions is confirmed by the fact
that the V1.2-11 software PNC purchased a month *before* the Critical
Date, and received from SuperSpeed only days *after* the Critical
Date, worked on PNC's cluster exactly as intended.").

-16-

before the critical date. The facts of this case are thus distinguishable from the facts of Pfaff, 119 S. Ct. at 304, where the Supreme Court determined the invention was ready for patenting before the critical date because subsequent to the offer for sale but prior to the critical date, the inventor provided a manufacturer with "a description and drawings that had 'sufficient clearness and precision to enable those skilled in the matter' to produce the device." Id. at 309 (quoting Dolbear v. American Bell Tel. Co., 8 S. Ct. 778, 783 (1888)). Because Google has failed to cite clear and convincing evidence in satisfaction of either prong of the Pfaff test, and because SuperSpeed has cited evidence that raises genuine issues of material fact as to each prong of that test, Google is not entitled to summary judgment that SuperSpeed's patents are invalidated by the on-sale bar.

    2.   Non-Infringement

    Asserting that claim 27 of the '226 patent embodies three limitations that are included in all of the other asserted claims, Google argues that it is entitled to summary judgment of non-infringement of all of the asserted claims because SuperSpeed cannot adduce evidence that the accused products contain any of the three limitations embodied in Claim 27, i.e.,:  a cache, an I/O Device, and a list of computers.[36]  Google argues:

---

[36]Id. at 8-9.

-17-

First, as construed by the court, a "cache" is "a portion of system main memory used for the temporary storage of data." SuperSpeed has identified the AppCache as the client-side cache in the accused configuration. However, AppCache is not located in system main memory, and does not store Google Docs document data.  Second, and perhaps more surprisingly, SuperSpeed identified Bigtable, and its underlying rows as an I/O device. SuperSpeed asserts that Bigtable meets this limitation despite the court's construction of I/O device as "disk or other persistent storage device."  The documents, deposition testimony, and SuperSpeed's own expert agree that BigTable is not "a device," but instead is a distributed system that is persisted across thousands of I/O devices. Finally, the accused functionality does not operate in terms of computers, and thus does not contain a "list of <u>computers</u>." Rather, it is undisputed that Google Docs operates in terms of <u>users</u>, and users could be logged-in on any number of computers, and on more than one computer at any given time. . . .[37]

SuperSpeed responds that summary judgment of non-infringement is not warranted because Google's arguments rest on unsourced claims by its expert that are contradicted by SuperSpeed's expert.[38]

(a)  Applicable Law

Evaluation of a motion for summary judgment of non-infringement is a two-step process.  <u>See</u> <u>Abbott Laboratories v. Sandoz, Inc.</u>, 566 F.3d 1282, 1288 (Fed. Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 1052 (2010).  First, the claims are properly construed and then those construed terms are compared to the accused product. <u>Id.</u>  "[A] determination of noninfringement, either literal or under

---

[37]<u>Id.</u> at 3-4.

[38]SuperSpeed's Response, Docket Entry No. 172, p. 1.

the doctrine of equivalents, is a question of fact." Crown
Packaging Technology, Inc. v. Rexam Beverage Can Co., 559 F.3d
1308, 1312 (Fed. Cir. 2009).  To infringe a claim literally, the
accused product must incorporate every limitation in a valid claim,
exactly. Zodiac Pool Care, Inc. v. Hoffinger Industries, Inc., 206
F.3d 1408, 1415 (Fed. Cir. 2000).  "Absent any limitation of a
patent claim, an accused device cannot be held to literally
infringe the claim." Id.  To infringe a claim under the doctrine
of equivalents, the accused product must incorporate every
limitation in a valid claim by a substantial equivalent. Id.  As
with literal infringement, there can be no infringement under the
doctrine of equivalents if one limitation of a claim is not present
in the accused device. Id. See also Crown Packaging, 559 F.3d at
1312 ("A finding of infringement under the doctrine of equivalents
requires a showing that the difference between the claimed
invention and the accused product was insubstantial.").

> (b)  Application of the Law to the Undisputed Facts

Claim 27 of the '226 Patent provides:

A method for accelerating access to data on a network
comprising the steps of:

creating a cache in the RAM of a computer connected to
the network;

creating a data structure in the computer for each of a
plurality of I/O devices connected to said network for
which data may be cached by said computer, each said data
structure including a list of all computers on said

-19-

network that permit caching with respect to the I/O
device corresponding to said data structure;

intercepting a write instruction to one of said plurality
of I/O devices from said computer; and

communicating over the network individually with each
computer in the list of computers in the data structure
corresponding to said one of said I/O devices to
invalidate data in caches on the network corresponding to
said one of said plurality of I/O devices.[39]

### (1)   SuperSpeed Fails to Raise Fact Issue as to Whether the Accused Products Satisfy the Claimed "Cache" Limitation

Google argues that it is entitled to summary judgment of non-

infringement because the accused products do not satisfy the

claimed "cache" limitation.  Google argues that

as construed by the court, a "cache" is "a portion of
system main memory used for the temporary storage of
data."  SuperSpeed has identified the AppCache as the
client-side cache in the accused configuration. However,
AppCache is not located in system main memory, and does
not store Google Docs document data.[40]

In support of this argument, Google cites the following excerpts

from the declaration of its expert witness, John Kubiatowicz:

10.   The "Application Cache" or "App Cache" allows a web
application to be cached and accessed without an
internet connection. . . I would like to note that
AppCache is not a Google interface, but rather is
an HTML5 interface.

---

[39]United States Patent 5,577,226 ("'226 Patent"), Exhibit A to
Declaration of John Kubiatowicz ("Kubiatowicz Declaration"), Docket
Entry No. 166-1, Col. 28:13-30.

[40]Google's Second MSJ, Docket Entry No. 164, p. 3.  See also
id. at 8, 20-21.

11. The AppCache is stored on the hard disk, similar to a normal web browser cache. AppCache is not stored in RAM.

12. In his May 13, 2014, Report entitled "Infringement Investigation for U.S. Patents 5,577,226 and 5,918,244 Vs. Google Software Products," (See John Bennett's Report on Infringement, May 13, 2014, ("Bennett Infringement Report,"), a true and correct copy of excerpts of which is attached hereto as "Exhibit Q.") Dr. John Bennett proceeds under the assumption that the "AppCache" is one of the caches in memory of the "client computer." *See, e.g.,* Exh. Q ¶75 (". . . Browser software on the client creates an in-memory cache as a feature of HTML5. This in-memory cache, known as the "AppCache," contains among other things, a copy of the model/document . . ."). However, as mentioned above, the AppCache is not stored in RAM.

13. Dr. Bennett cites to a passage about HTML5 from the WWW organization. In particular, he confirms my earlier statement that AppCache allows a *web application* to be cached and accessed without an internet connection. *See* Exh. Q at ¶75 ("HTML5 introduces application cache, which means that a web application is cached, and accessible without an internet connection. . .").

14. Thus, the "App Cache" is not a "cache" as defined by this Court in its Claim Construction Order (Dkt. 131). Further, the "App Cache" does not contain document data.[41]

SuperSpeed responds that its expert, "who has examined the relevant code, testified at his deposition that 'the AppCache is both information stored in the browser in RAM, and it is also persisted."[42] Thus, SuperSpeed argues that

---

[41]Kubiatowicz Declaration, Docket Entry No. 166, pp. 3-4 ¶¶ 11-14.

[42]SuperSpeed's Response, Docket Entry No. 172, p. 18 (citing Exhibit Q to Carlis Declaration, Deposition of John K. Bennett, Docket Entry No. 172-18, p. 126:2-4).

the parties have offered competing evidence: Google's
expert believes that the AppCache is stored only on disk,
while SuperSpeed's expert has testified that the relevant
data is stored *both* on disk and temporarily cached in
RAM.  Google is no more entitled to summary judgment on
this issue than SuperSpeed is, which is why the jury
should resolve the dispute.[43]

Google replies that

Dr. Bennett's report only assumes that AppCache is one of
the caches in memory of the "client computer." . .
Google provided Dr. Kubiatowicz's opinion, his
explanation of the AppCache technology, reference to
documentary support for his opinion, including the HTML5
specification . . . Google more than sufficiently met its
initial burden to show that under the HTML5 protocol,
AppCache was saved on disk and not RAM. . .

In response, SuperSpeed relies only on Dr. Bennett's bare
conclusion that:

> A.    . . . AppCache is both information stored
>        in the browser in RAM, and it is also
>        persisted.

. . . SuperSpeed provides no other support.  SuperSpeed's
rebuttal is devoid of any actual facts or supporting
documentation and fails to meet SuperSpeed's burden [of]
showing that an issue of fact remains regarding whether
AppCache is stored in RAM.[44]

SuperSpeed argues in its sur-reply that

Google wrongly claims that Dr. Bennett has no support for
his conclusion that Google's AppCache is, indeed, a
cache.  Here too Dr. Bennett's testimony is supported by
citations to Google's source code contained in his expert
report.  Exhibit O, at 15, 23-24.  The mere fact that

---

[43]Id. at 18-19.

[44]Google's Reply, Docket Entry No. 175, pp. 12-13 (citing
Exhibit Q to Carlis Declaration, Deposition of John K. Bennett,
Docket Entry No. 172-18, p. 126:2-4).

Google's expert disagrees with Dr. Bennett's conclusions is not grounds for summary judgment.[45]

The first step of the method described in Claim 27 of the '226 Patent calls for "creating a cache in the RAM of a computer connected to the network."[46]   In the Memorandum Opinion on Claim Construction the court held that the term "cache" when used as a noun means:  "a portion of system main memory used for temporary storage of data."[47]   In reaching this holding the court observed that

> [t]he parties agree that "cache" is a portion of system main memory used for temporary storage of data, but disagree as to whether "cache" applies only to data from an I/O device.   In the <u>Oracle</u> case the parties agreed that "cache" meant "a portion of system main memory (e.g. RAM) used for temporary storage of data.[48]

The term "RAM" was not in dispute.   The parties' current dispute over whether AppCache is stored in main memory, e.g., RAM, or on a hard disk shows that there is no dispute that RAM is another term for main memory.

---

[45]SuperSpeed's Sur-Reply, Docket Entry No. 179, p. 10 (citing, Infringement Investigation for U.S. Patents 5,577,226 and 5,918,244 vs. Google Software Products ("Infringement Investigation"), Exhibit O to Carlis Declaration, Docket Entry No. 179-16, pp. 15, 23-24).

[46]'226 Patent, Exhibit A to Kubiatowicz Declaration, Docket Entry No. 166-1, Col. 28:15-16.

[47]Memorandum Opinion on Claim Construction, Docket Entry No. 131, p. 28.

[48]<u>Id.</u> at 24 (citing SuperSpeed, LLC's Opening Brief Regarding Claim Construction ("SuperSpeed's Opening Brief"), Docket Entry No. 84, p. 7, and Exhibit C thereto, December 19, 2005, Order entered in <u>SuperSpeed Software, Inc. v. Oracle Corp.</u>, Civil Action No. H-04-3409, p. 7).

Google has presented evidence in the form of testimony from its expert, Kubiatowicz, that AppCache is an HTML5 protocol stored on a computer's hard disk.  Kubiatowicz's testimony is supported by reference to HTML5 specifications regarding "disk space," which cautions:   "User agents should consider applying constraints on disk usage of application caches. . . User agents should allow users to see how much space each domain is using, and may offer the user the ability to delete specific application caches."[49] SuperSpeed does not dispute that AppCache is stored on a computer's hard disk, but argues that "Google wrongly claims that Dr. Bennett has no support for his conclusion that Google's AppCache is, indeed, a cache. . . . Bennett's testimony is supported by citations to Google's source code contained in his expert report."[50] But the issue is not whether AppCache is a cache, the issue is whether AppCache is stored on a disk or in RAM.

The pages of Bennett's report that SuperSpeed cites in support of its argument that AppCache is stored not only on a disk but also in RAM contain references to Google source code, but fail to explain how or why the source code supports Bennett's conclusion that AppCache is stored in RAM.  For example, ¶ 60 on page 15 of Bennett's report states:

_____

[49]Exhibit C to Kubiatowicz Declaration, HTML 5.1 Nightly, Docket Entry No. 166-3, § 6.7.8 "Disk space."

[50]SuperSpeed's Sur-Reply, Docket Entry No. 179, p. 10 (citing Infringement Investigation, Exhibit O to Carlis Declaration, Docket Entry No. 179-16, pp. 15, 23-24).

> With the Google Drive client application installed and
> offline mode . . . enabled on a client's machine, local,
> cached copies of user files and documents, as well as
> associated metadata, are available for access and editing
> when a user does not have Internet access.  These cached
> copies are synchronized with Google servers when a user
> has Internet access.  The cached data and metadata are
> stored in three places: the browser cache, the AppCache,
> and the modelState.[51]

A footnote to this text explains that "files, including Google Docs

files will be stored on the user's local computer."[52]   This

paragraph of Bennett's report acknowledges that cached data is

stored in at least three different places in a client's computer --

the browser cache, the AppCache, and the modelState -- but does not

state that AppCache or any cached data is stored in RAM.  Paragraph

75 on pages 23-24 of Bennett's Report states:

> The client computer also contains a cache located in the
> RAM of the client computer.  Browser software on the
> client creates an in-memory cache as a feature of HTML5.
> This in-memory cache, known as the "AppCache", contains,
> among other things, a copy of the model/document, which
> represents the actual data and meta data associated with
> a Document, Spreadsheet, or Presentation, etc., for the
> model.[53]

In support of this statement, Bennett cites the following webpage:

http://www.w3schools.com/html/html5_app_cache.asp.[54]   But Bennett

_____

[51]Infringement Investigation, Exhibit O to Carlis Declaration,
Docket Entry No. 179-16, p. 15 ¶ 60.

[52]Id. at n.5.

[53]Id. at 23-24 ¶ 75.

[54]Id. at 24 n.19.

-25-

has not pointed the court to specific facts or statements on this webpage that support his conclusion that AppCache is stored in RAM; and the court's review of this webpage on November 11, 2014, found no reference to storage of AppCache in RAM.

Google has presented evidence from which a reasonable jury could conclude that the accused product AppCache does not satisfy the claimed limitation "cache" because it does not use a portion of RAM, i.e., system main memory, to store data.[55] Although SuperSpeed has presented conflicting testimony of its expert, Bennett's testimony on this issue is conclusory and devoid of facts upon which his conclusions are based. Because neither SuperSpeed nor Bennett have cited evidence showing that Bennett's testimony that AppCache is stored not just on a computer's hard disk but also in a computer's RAM, SuperSpeed has failed to raise a fact issue for trial as to whether Google's AppCache infringes the patents-in-suit by using a portion of main memory (e.g., RAM) to store data. See TechSearch, 286 F.3d at 1372 ("general assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden").

_____

[55]Although Google argues that AppCache does not satisfy the limitation that "cache" store data for the additional reason that AppCache does not store documents, this argument presumes that documents are the only type of data that can be stored. Because the court's construction of "cache" references storage of "data" and not documents, the court is not persuaded that whether AppCache does or does not store documents is relevant to the issue at hand.

        **(2)**    **SuperSpeed Fails to Raise a Fact Issue as to Whether the Accused Products Satisfy the Claimed "I/O Device" Limitation**

Google argues that it is entitled to summary judgment of non-infringement because "Google's accused products do not have a[n] 'I/O Device' as required by the Asserted Claims and as accused by SuperSpeed."[56]  Google explains that

> SuperSpeed identified Bigtable and its underlying rows as an I/O device.  SuperSpeed asserts that Bigtable meets this limitation despite the court's construction of I/O device as "disk or other persistent storage device."  The documents, deposition testimony, and SuperSpeed's own expert agree that BigTable is not "a device," but instead is a distributed system that is persisted across thousands of I/O devices.[57]

Citing the Kubiatowicz declaration, Google asserts that "[a] persistent storage device is one that stores data in non-volatile storage, such as a hard drive, even when not powered,"[58] and that "I/O devices utilize local physical processes (such as magnetic domains on spinning platters) to store data in a non-volatile fashion with access latencies . . . limited by these local processes."[59]  Google argues that "Bigtable, on the other hand, comprises a complex network of servers, DRAM, and storage devices. . . Bigtable achieves persistence through non-local

---

[56]Google's Second MSJ, Docket Entry No. 164, p. 21.

[57]Id. at 3-4.  See also id. at 8-9, 21-23.

[58]Id. at 21 (citing Kubiatowicz Declaration, Docket Entry No. 166, ¶ 16).  See also id. at 3.

[59]Id. at 22 (citing Kubiatowicz Declaration, Docket Entry No. 166, ¶ 17).

storage of information (replication) across a distributed set of
I/O devices. . ."[60] Google argues that "SuperSpeed nowhere points
to any <u>device</u> that is a part of the Google system as the accused
'I/O Device' required in the SuperSpeed Patents."[61]

Citing the testimony of its expert, Bennett, SuperSpeed
responds that

> Google's source code, 30(b)(6) testimony, and internal
> documents demonstrate that bigtable rows are persistent
> storage devices. After reviewing that Google-generated
> information, SuperSpeed's technical expert testified: "A
> bigtable row is an identifiable portion of Bigtable used
> to store related information . . . higher-level software
> uses Bigtable rows as its persistent storage device.[62]

Bennett testified as follows:

Q.   Explain what a Bigtable row is.

A.   A Bigtable row is a[n] identifiable portion of
     Bigtable used to store related information,
     typically -- well, depending on whether it's
     metadata or content or both, higher levels -- you
     know, higher-level software uses Bigtable rows as
     its persistent storage device.[63]

SuperSpeed also cites the testimony of Google's Rule 30(b)(6)
witness, Micah Lemonik, that Google Docs relies on BigTable rows

[60]<u>Id.</u> (citing Kubiatowicz Declaration, Docket Entry No. 166,
¶ 19).

[61]<u>Id.</u> at 22-23 (citing Kubiatowicz Declaration, Docket Entry
No. 166, ¶ 21).

[62]SuperSpeed's Response, Docket Entry No. 172, p. 15 (citing
Bennett Deposition, Exhibit Q to Carlis Declaration, Docket Entry
No. 172-18, pp. 116:23-117:5).

[63]Bennett Deposition, Exhibit Q to Carlis Declaration, Docket
Entry No. 172-18, pp. 116:23-117:5.

"for the purposes of storing the document data,"[64] and Google's internal "Developer Handbook," which states that "Bigtable will ensure the persistence of your data for the next 100 years."[65]

Google replies that

[o]n April 9, 2014, the Court clarified that the limitation "I/O Device" meant "disk or other persistent storage **device**" and not "disk or other persistent storage." . . Despite clarifying the meaning of the term, SuperSpeed seeks to remove the word "device" and broadly apply the I/O device limitation to mean just "persistent storage," a construction the Court rejected.[66]

Citing the Kubiatowicz Declaration submitted in support of its reply, Google asserts that

[o]ne of ordinary skill in the art would not view a set of rows in Google's BigTable as a "device" . . . Google Docs software never "looks inside the implementation" to find each physical disk which holds information in the specified set of rows. . . SuperSpeed has not shown (or attempted to show) that the accused configuration of software can name or interact directly with the physical disks storing information for any given set of BigTable rows. . . Because SuperSpeed has failed to identify any I/O device, summary judgment is appropriate.[67]

---

[64]SuperSpeed's Response, Docket Entry No. 172, p. 15 (citing Micah Lemonik Vol. 1, Exhibit R to Carlis Declaration, Docket Entry No. 172-19, pp. 69:21-70:11).

[65]Id. (citing Google Developer Handbook, Exhibit S to Carlis Declaration, Docket Entry No. 172-20, p. 3 (GOOG-SSD00034748).

[66]Google's Reply, Docket Entry No. 175, p. 15 (citing Clarification of Memorandum Opinion on Claim Construction, Docket Entry No. 145).

[67]Id. at 16 (citing Declaration of John D. Kubiatowicz in Support of Google Inc.'s Reply in Support of Google's Motion for Summary Judgment of Invalidity, Non-Infringement, and No Willful Infringement ("Kubiatowicz Declaration in Support"), Docket Entry No. 175-1, ¶¶ 8-9).

The second step in the method described in Claim 27 of the '226 Patent calls for

> creating a data structure in the computer for each of a plurality of I/O devices connected to said network for which data may be cached by said computer, each said data structure including a list of all computers on said network that permit caching with respect to the I/O device corresponding to said data structure.[68]

Each of the next two steps also reference "I/O Device."[69]  In its Memorandum Opinion on Claim Construction the court held that the term "I/O Device" used throughout both the '226 and '244 Patents means "disk or other persistent storage device."[70]  In reaching this conclusion the court observed that "I/O" is an abbreviation for "Input/Output," and that the parties agreed that the construction of "I/O Device" should include "disk or other persistent storage." The only dispute was whether the construction should include the term "devices" as Google argued or "mechanisms" as SuperSpeed argued.  This issue was not addressed in either the Oracle or the IBM case because in both of those cases SuperSpeed suggested or agreed to constructions that included the word "device."[71] Asserting that "[t]here is no benefit to defining a term with that

---

[68]'226 Patent, Exhibit A to Kubiatowicz Declaration, Docket Entry No. 166-1, Col. 28:17-22.

[69]Id. at Col. 28:23-29.

[70]Memorandum Opinion on Claim Construction, Docket Entry No. 131, p. 24.

[71]Id. at 23.

same term,"[72] SuperSpeed cited the IEEE Dictionary definition of
"device" in support of its proposed construction:  "a mechanism or
piece of equipment designed to serve a purpose or perform a
function."[73]  SuperSpeed argued that "[s]uch a definition clarifies
the meaning of 'I/O device' without awkwardly defining the term
with the term."[74]  Since even the IEEE Dictionary definition of
"device" on which SuperSpeed relied treats "device" as
interchangeable with "mechanism," the court was not persuaded that
construing the word "device" to mean "mechanism" provided needed
clarity and was, instead, persuaded that the term "device" needed
no construction.[75]

Since the court has already held that the term "device" needs
no construction, that term must be given its ordinary and customary
meaning.  See Phillips v. AWH Corporation, 415 F.3d 1303, 1312-13
(Fed. Cir. 2005) (en banc), cert. denied, 126 S. Ct. 1332 (2006)

---

[72]Id. (citing SuperSpeed's Opening Brief, Docket Entry No. 84,
p. 11).

[73]Id. (citing The IEEE Standard Dictionary of Electrical and
Electronics Terms (Sixth Edition, 1996), p. 279)).

[74]Id.

[75]Although the text of the court's Memorandum Opinion on Claim
Construction construed the disputed term "I/O Device" to mean "disk
or other persistent storage device," due to a clerical error, the
summary chart in the final section of the opinion omitted the word
"device" from the construction of this term stating that "I/O
Device" was construed to mean "disk or other persistent storage"
instead of "disk or other persistent storage device."  Upon request
for clarification from the parties, this clerical error was
corrected in the Clarification of Memorandum Opinion on Claim
Construction (Docket Entry No. 145).

-31-

(quoting <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." <u>Id.</u> at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." <u>Id.</u>

> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. . . . In such circumstances, general purpose dictionaries may be helpful.

<u>Id.</u> at 1314 (citations omitted).

Google's expert, Kubiatowicz, has declared that "[o]ne of ordinary skill in the art would not view a set of rows in Google's BigTable as a 'device.'"[76]  Kubiatowicz explained that because Google Docs software never

> "looks inside the implementation" to find each physical disk which holds information in the specified set of rows, . . . [SuperSpeed cannot] show that the accused configuration of software can name or interact directly with the physical disks storing information for any given set of BigTable rows.[77]

_____

[76]Google's Reply, Docket Entry No. 175, p. 16 (citing Kubiatowicz Declaration in Support, Docket Entry No. 175-1, ¶¶ 8-9).

[77]Kubiatowicz Declaration in Support, Docket Entry No. 175-1, ¶¶ 8-9.

Google therefore argues that BigTable rows are not "I/O Devices" as that term has been construed by the court.  SuperSpeed has not cited any evidence capable of contradicting or refuting Kubiatowicz's declaration that "[o]ne of ordinary skill in the art would not view a set of rows in Google's BigTable as a 'device.'"[78] Nor has SuperSpeed cited any evidence capable of showing that any of the accused products name or interact directly with the physical disks or other mechanisms used to store information for any given set of BigTable rows.[79]  Instead, SuperSpeed has cited testimony from its expert that "higher-level software uses Bigtable rows as its persistent storage device,"[80] testimony of Google's Rule 30(b)(6) witness that Google Docs relies on BigTable rows "for the purposes of storing the document data,"[81] and Google's internal "Developer Handbook" for stating that "Bigtable will ensure the persistence of your data for the next 100 years."[82]  No reasonable fact-finder could conclude from this evidence that BigTable rows

---

[78]Google's Reply, Docket Entry No. 175, p. 16 (citing Kubiatowicz Declaration in Support, Docket Entry No. 175-1, ¶¶ 8-9).

[79]Kubiatowicz Declaration in Support, Docket Entry No. 175-1, ¶¶ 8-9.

[80]Bennett Deposition, Exhibit Q to Carlis Declaration, Docket Entry No. 172-18, pp. 116:23-117:5.

[81]SuperSpeed's Response, Docket Entry No. 172, p. 15 (citing Micah Lemonik Vol. 1, Exhibit R to Carlis Declaration, Docket Entry No. 172-19, pp. 69:21-70:11).

[82]Id. (citing Google Developer Handbook, Exhibit S to Carlis Declaration, Docket Entry No. 172-20, p. 3 (GOOG-SSD00034748)).

satisfy the element of "I/O Device."  At best SuperSpeed's evidence shows that higher level software such as Google Docs uses BigTable rows to store data, and that BigTable is capable of ensuring persistence of data for a long time.  Missing from the summary judgment record is any evidence capable of proving that a person of ordinary skill would have a reasonable basis for viewing BigTable rows as disks or other persistent storage devices.  Absent such evidence, SuperSpeed has failed to raise a fact issue as to whether BigTable Rows satisfy the limitation "I/O Device" used in Claim 27.

> **(3) SuperSpeed Fails to Raise Fact Issue as to Whether the Accused Products Satisfy the Claimed Limitation "List of Computers"**

Google argues that it is entitled to summary judgment of non-infringement because the accused products do not operate in terms of computers, and thus do not contain a "list of computers."[83] Google argues that "it is undisputed that Google Docs operates in terms of users, and users could be logged-in on any number of computers, and on more than one computer at any given time."[84] Asserting that "SuperSpeed identifies the 'collaborator map' as containing the 'list of computers' on the client side and the 'joinEventMap' as containing the 'list of computers' on the server

---

[83]Google's Second MSJ, Docket Entry No. 164, p. 4.  See also id. at 9, 23-24.

[84]Id. at 4.

-34-

side,"[85] Google argues that these accused products do not satisfy
the claimed limitation because "[t]he 'collaborator map' contains
a list of users and session IDs, not a list of computers."[86] Citing
the Kubiatowicz Declaration, Google argues that the accused
products do not contain a list of computers because "[f]or security
and privacy purposes, the client side of the accused configuration
is not given the IP addresses of remote computers that are
collaborating on a given document."[87] Google also argues that

> [n]either the "collaborator map" nor the "joinEventMap"
> satisfy the "data structure" element of claim 27 of the
> '266 Patent, because these structures track active
> collaborators, not computers as required by the claim
> language. . . Collaborator-users are not tied to specific
> computers and come and go at will.[88]

Google also argues that "users who are not currently working on the
document do not appear in the data structures identified by
SuperSpeed."[89]

SuperSpeed responds that Google's contention that its products
do not satisfy the "computer list" and "data structure" elements in
Claim 27 of the '226 Patent relies on two false premises:

---

[85]Id. at 23.

[86]Id. (citing Kubiatowicz Declaration, Docket Entry No. 166,
¶ 24).

[87]Id. (citing Kubiatowicz Declaration, Docket Entry No. 166,
¶ 24).

[88]Id. (citing Kubiatowicz Declaration, Docket Entry No. 166,
¶ 25).

[89]Id. at 24 (citing Kubiatowicz Declaration, Docket Entry
No. 166, ¶ 26). See also Google's Reply, Docket Entry No. 175,
pp. 14-15.

-35-

> First, Google insists that the "[computer] list" must
> include the "IP addresses" of the other relevant
> computers. This additional limitation finds no support
> in the patents, and would exclude the preferred
> embodiment — which did not include IP addresses as part
> of its list. Second, Google insists that the list
> include every computer connected to the internet, which
> Google's products admittedly do not do. But this is not
> what the claim requires. The list need only include
> those computers on the network "that permit caching,"
> which is what Google's products do.[90]

As evidence that Google's accused products contain the requisite list of computers, SuperSpeed cites testimony of its expert, Bennett, stating that Google relies on a "session ID" to identify not just users, but users on specific computers that are actively collaborating.[91] SuperSpeed argues that Bennett's testimony raises disputed issues of fact for trial as to whether a list of computers is practiced by the accused products.[92]

Google replies that "SuperSpeed's bare conclusion that Google's session ID met the limitation, supported only with conclusory deposition testimony . . . could not carry SuperSpeed's burden to show a genuine issue remained."[93] In its Sur-Reply SuperSpeed disputes Google's contention that "SuperSpeed has offered only the 'bare conclusion that Google's session ID met the

---

[90]SuperSpeed's Response, Docket Entry No. 172, p. 19.

[91]Id. at 20 (citing Bennett Deposition, Exhibit Q to Carlis Declaration, Docket Entry No. 172-18, pp. 75:23-76:4, 148:3-18, 152:11-13, 159:15-20, 160:7-10, 164:18-20). See also SuperSpeed's Sur-Reply, Docket Entry No. 179, p. 10 (citing Infringement Investigation, Exhibit O to Carlis Declaration, Docket Entry No. 179-16, pp. 37-43, 53-63).

[92]Id. at 21.

[93]Google's Reply, Docket Entry No. 175, p. 14.

['list of computers'] limitation."[94]   SuperSpeed argues that "Bennett's report goes into painstaking detail regarding how Google's session ID meets that limitation, including by providing citations to Google's source code."[95]

Google's argument that the accused products do not satisfy the claimed element of "computer list," because for security reasons client side computers are not given the IP addresses of remote computers that are collaborating on a given document, does not establish that the accused products do not practice the claimed element "list of computers."[96]   Google has neither argued nor cited evidence capable of establishing that the computer lists claimed in the patents require IP addresses, or that other means for listing computers do not exist.  Therefore, the fact that Google's accused products do not provide the IP addresses of remote computers to client side computers does not establish as a matter of law that the accused products do not practice the claimed element of a "computer list."

Nevertheless, Google has pointed to the absence of evidence on an element of the infringement claim for which SuperSpeed bears the burden of proof, i.e., that the accused products satisfy the "list of computers" limitation.  The Bennett Deposition testimony that

---

[94]SuperSpeed's Sur-Reply, Docket Entry No. 179, p. 10 (quoting Google's Reply, Docket Entry No. 175, p. 14).

[95]Id. (citing Infringement Investigation, Exhibit O to Carlis Declaration, Docket Entry No. 179-16, pp. 37-43, 53-63).

[96]Id. (citing Kubiatowicz Declaration, Docket Entry No. 166, ¶ 24).

-37-

SuperSpeed cites in support of its argument that Google's session ID meets the "list of computers" limitation is -- as Google argues -- conclusory. Without either disputing Google's assertion that Bennett's deposition testimony on this issue is conclusory, or citing additional excerpts from that deposition where Bennett states a factual basis for his conclusion that Google's session ID meets the list of computers limitation, SuperSpeed asserts that "Bennett's report goes into painstaking detail regarding how Google's session ID meets that limitation, including by providing citations to Google's source code."[97]   Although the pages of Bennett's report that SuperSpeed cites in support of this argument contain references to Google's source code, Bennett neither states that Google's session ID meets the list of computers limitation nor explains why the source code cited thereon leads him to draw that conclusion.   Because SuperSpeed has failed to cite evidence from which a reasonable fact-finder could conclude that Google's session ID satisfies the claimed "list of computers" limitation, the court concludes that SuperSpeed has failed to raise a genuine issue of material fact for trial.

### 3.   Willful Infringement

Google argues that

> [d]uring   the   parties'   April   17,   2014   mediation, SuperSpeed for the first time took the position that

---

[97]SuperSpeed's Sur-Reply, Docket Entry No. 179, p. 10 (citing Infringement Investigation, Exhibit O to Carlis Declaration, Docket Entry No. 179-16, pp. 37-43, 53-63).

> Google's infringement is willful. Nowhere in its Amended
> Complaint (Dkt. 64) does SuperSpeed allege willful
> infringement, nor does it cite to the statute that
> addresses willful infringement (35 U.S.C. § 284).
> Without any allegations or facts to support is eleventh-
> hour assertions, SuperSpeed cannot show that Google acted
> with any recklessness.[98]

Since as Google argues, SuperSpeed has neither alleged in its

pleadings nor argued to this court that Google's infringement, if

any, was willful, the court concludes that no genuine issue of

material fact exists as to willfulness and that summary judgment on

this issue is appropriate. See S.D. Texas Local Rule 7.4 ("Failure

to respond will be taken as a representation of no opposition.").

### III.  Order

For the reasons stated above in § II, Google's motion for

summary judgment is denied as to invalidity, and granted as to Non-

Infringement and No Willful Infringement.  Accordingly, Defendant

Google Inc.'s Motion for Summary Judgment in Support of Invalidity,

Non-Infringement, and No Willful Infringement (Docket Entry

No. 164) is **GRANTED IN PART AND DENIED IN PART**.

Because the court has granted Google's motion for summary

judgment as to non-infringement and willful infringement,

SuperSpeed's Motion to Strike Portions of Kubiatowicz Expert Report

Referring to Undisclosed Invalidity Allegations (Docket Entry

---

[98]Google's Second MSJ, Docket Entry No. 164, p. 4.

-39-

No. 160) is **DENIED AS MOOT**, and Defendant Google Inc.'s Motion to Exclude Testimony of SuperSpeed, LLC's Expert Robert Mills (Docket Entry No. 163) is **DENIED AS MOOT**.

   **SIGNED** at Houston, Texas, on this 5th day of December, 2014.

                                   _____
                                            SIM LAKE
                                   UNITED STATES DISTRICT JUDGE